Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
Winnie Hung, Bar No. 291614
WHung@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

*Attorneys for Movant Non-party*
TWITTER, INC.

FILED

MAR 11 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

*In the Matter of a Subpoena to Non-party Twitter, Inc.*

Eastern Profit Corp. Ltd.,

v.

Strategic Vision US, LLC

Case No. CV20-80062MISC JSC

(S.D.N.Y. Case No. 1:18-cv-02185)

**NON-PARTY TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY SUBPOENA**

Date: April 15, 2020
Time: 9:00 a.m.

## NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY

**PLEASE TAKE NOTICE** that on April 15, 2020 at 9:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom _____, _____ Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Twitter, Inc. ("Twitter") will, and hereby does, move to quash or modify a subpoena seeking the identifying information associated with eight Twitter accounts in connection with litigation in the Southern District of New York (the "Subpoena"), to which Twitter is not a party.

Twitter brings this motion under Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which requires the court for the district where compliance is required (the Northern District of California for Twitter, which is headquartered in San Francisco) to quash a subpoena that requires disclosure of protected matter. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Ryan T. Mrazik, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Twitter first requests that the Court quash the Subpoena because it was not properly served. Alternatively, Twitter requests that the Court quash or modify the Subpoena so that the issuing party receives only limited account registration information and the IP address associated with the accounts' creation for the Twitter accounts identified in the Subpoena only if the issuing party can satisfy the First Amendment's requirements for unmasking an anonymous speaker.

DATED: March 11, 2020

**PERKINS COIE LLP**

By: /s/ Julie E. S.

Julie E. Schwartz

*Attorneys for Movant Non-party*
Twitter, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Non-party Twitter, Inc. ("Twitter") requests that the Court quash or modify the Subpoena issued by Strategic Vision, a defendant in litigation in the Southern District of New York. The Subpoena seeks 11 categories of information and records for eight Twitter accounts. Strategic Vision believes that the accounts' information might support their defense and counterclaim arguments that the plaintiff is in contact with mainland China and is not, as he claims, a dissident of the People's Republic of China ("PRC") and Communist Party of China ("CCP").

First, the Subpoena was not properly served and should therefore be quashed entirely.

Alternatively, the Subpoena should be quashed or modified to ensure that it is not being used to chill speech, as protected by the First Amendment to the U.S. Constitution. Strategic Vision was willing to limit its Subpoena to only basic identifying information and the IP address associated with the accounts' creation. It is unclear to Twitter, however, that even this narrowed disclosure would comply with the First Amendment. Therefore, Twitter requests that the Court undertake the First Amendment analysis and quash or modify the Subpoena as necessary.[1]

### II. BACKGROUND

**A.  Twitter**

Twitter is a global information sharing and distribution platform committed to the free expression of more than 100 million daily active users, and is involved in this matter only because eight Twitter accounts might be associated with the plaintiff in litigation in federal court in New York. In general, Twitter accountholders write short messages, or Tweets, of up to 280 characters, and can include photos, videos, and links to other content. By default, Tweets are public and may be viewed everywhere and by anyone. Twitter accountholders choose a handle (e.g., @handle); they may associate that handle with their true identities, or may choose to speak pseudonymously.

---

[1] Twitter brings this Motion pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which requires a court to quash a subpoena that requires disclosure of a protected matter. Twitter brings the motion in this district because it is the district where compliance is required—Twitter is headquartered and its records custodians are located in San Francisco, California.

B.  **Strategic Vision's Subpoena to Twitter**

Strategic Vision is the defendant in the matter of *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, Case No. 1:18-cv-02185-JGK-DCF, pending in the Southern District of New York. Strategic Vision sent a subpoena via FedEx and fax to Twitter seeking 11 categories of information and other records associated with eight Twitter accounts. *See* Declaration of Ryan Mrazik in Support of Motion to Quash or Modify Subpoena ("Mrazik Decl.") at ¶ 2 and Ex. A.

Through meeting and conferring with counsel for Strategic Vision, Twitter understands that Strategic Vision believes that the eight accounts are associated with the plaintiff or other entities connected to the New York litigation, and that their associated account records may support an argument that the plaintiff is regularly in contact with and coordinating with mainland China and is not, as he claims, a dissident of the PRC and CCP. *See id.* at ¶ 5.

The eight Twitter accounts are not identified in the complaint or answer for the underlying litigation. Instead, the theory for how they are relevant to the matter has been set out in briefing regarding other non-party subpoenas to Google, GoDaddy, and YouTube seeking similar information. *See id.* at Ex. B. Briefly, Strategic Vision has asserted a defense to a breach of contract claim and a fraud counterclaim that will undermine the plaintiff's claim that he is a dissident and, instead, "will show that [he and associated] entities … are extraordinarily intertwined and are tethered to [] Mainland [China]." *Id.* at 5. Strategic Vision seeks to rely on records from these companies to show "who actually registered and, in some cases, is billed for, the accounts of supposedly independent entities and individuals" and "will show that authorized users access the accounts and control key websites directly from Mainland China." *See id.* at 4.

In addressing the subpoenas to other non-parties Google, GoDaddy, and YouTube, the court in New York allowed Strategic Vision to obtain only very limited account information, specifically "the identity of the registrant of the specified accounts and information associated with that registrant, including contact information provided by the registrant (such as email and physical addresses) and the IP address from which the account was registered." *See id.* at Ex. C.

C. **Twitter and Its First Amendment Concerns**

Twitter and counsel for Strategic Vision met and conferred about the Subpoena. *Id.* at ¶ 5. Consistent with the New York court's ruling on the other subpoenas to non-party service providers like Twitter, counsel for Strategic Vision offered to accept a limited production from Twitter of only account identifying information such as email address and contact information, and the IP address associated with account creation for the eight accounts in question. *Id.* It remains unclear to Twitter, however, whether Strategic Vision can satisfy the requirements of the First Amendment before they may be entitled to receive even only this limited information.

Accordingly, Twitter now brings this motion to quash the Subpoena because it was served improperly, or to quash or modify the Subpoena to require production only if Strategic Vision can satisfy the First Amendment's requirements for unmasking the speakers for these accounts.

### III. ARGUMENT

A. **The Subpoena Should be Quashed Because It Was Not Properly Served.**

Fed. R. Civ. P. 45(b)(1) provides that proper service of a non-party subpoena "requires delivering a copy to the named person." This rule requires personal service. *See, e.g., Chima v. U.S. Dept. of Defense*, 23 Fed.Appx. 721, 724, 2001 WL 1480640, at *2 (9th Cir. 2001) (affirming trial court's refusal to require witnesses to comply with subpoenas served by mail and not by personal service); *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, No. C 13–05881 LB, 2015 WL 848554, at *4 (N.D. Cal. Jan. 28, 2015) ("Rule 45 requires a subpoena to be 'delivered' to the named person, and most courts have interpreted that word to require personal service."); *Scofield v. Ball*, No. 11cv378–BEN (WMc), 2013 WL 6061983, at *2 n.2 (S.D. Cal. Nov. 15, 2013) ("personal service of a subpoena duces tecum is required."); *Davis v. Brown*, No. CV 12–1906, 2013 WL 1933850, at *2 (E.D.N.Y. May 9, 2013) ("the subpoena was served by mail[, but Rule] 45(b)(1) requires personal service.") (collecting cases); *Special Mkts. Ins. Consultants, Inc. v. Lynch*, No. 11 C 9181, 2012 WL 1565348, at *1 n.1 (N.D. Ill. May 2, 2012) (same).

Here, the Subpoena was served on Twitter only by FedEx, not by personal service as required by Rule 45. The Subpoena should therefore be quashed entirely for this reason alone.[2]

### B. The First Amendment's Requirements Must Be Met Before Strategic Vision Can Obtain Account Identifying Information or the IP Address for Account Creation.

Anonymous online speech is protected by the First Amendment to the United States Constitution. As the Ninth Circuit has recognized, "[a]s with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation …[or] concern about social ostracism'." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (*citing McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)).

Therefore, when a civil litigant such as Strategic Vision asserts that a speaker should have their account identifying information disclosed, the First Amendment protects the speaker from being unmasked unless the litigant "persuade[s] the court that there is a real evidentiary basis for believing that the [speaker] has engaged in wrongful conduct that has caused real harm to the interests of the [issuing party]." *Music Group Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)). Indeed, many federal and state courts require a party seeking to unmask an anonymous speaker to (1) attempt to notify the affected speaker and (2) make a *prima facie* showing, with evidence, of the cause of action for defamation or libel, for example, before the plaintiff can discover the identity of an anonymous online speaker. *See Krinsky v. Doe 6*, 159 Cal. App 4th 1154 (2008); *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. 2001).

If the litigant makes this showing, the court must then "assess and compare the magnitude of harms that would be caused" to the parties' competing interests if the court ordered disclosure of the speaker's identity. *See Music Group* Macao, 82 F. Supp. 2d at 983 (citing *Highfields*, 385 F. Supp. 2d at 976). If the court is not satisfied that the litigant has met both prongs of the *Highfields* test, then the party is not entitled to discover the anonymous speaker's identity. *See id.*

---

[2] Twitter also objects that the Subpoena demands compliance more than 100 miles from San Francisco, where Twitter's records custodians are located. Fed. R. Civ. P. 45(c)(1).

- 4 -

TWITTER, INC.'S MOTION TO QUASH OR MODIFY

at 985-87 (denying a motion to compel Twitter to produce identifying information for two anonymous Twitter account holders where Plaintiff did not satisfy the *Highfields* test).

Here, it is unclear to Twitter, for example, whether the eight accounts in question belong to parties to the litigation and whether their identifying information should be disclosed only to support potential defense and counterclaim arguments that the plaintiff is actually associated with mainland China and not a dissident, as he might claim. No matter what, disclosing their account information could have dire effects for the account holders' ability to further speak online and the First Amendment standard should be applied to ensure they are not unmasked inappropriately.

Indeed, if the accounts do belong to parties to the matter, then the parties can collect and provide the information themselves: account registration information and IP address associated with its creation are available to Twitter account holders in their own accounts. *See* Twitter Help Center, "How to access your Twitter data" *available at* https://help.twitter.com/en/managing-your-account/accessing-your-twitter-data. Having the parties produce their own information (or object to its production and having the court adjudicate any objections) is the best way to ensure that litigation remains between the parties, which is where it belongs. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

If, on the other hand, the accounts do not belong to the parties and belong only to non-party witnesses, the First Amendment's protections are even more stringent and four factors must be met: (1) the subpoena seeking the information must have been issued in good faith and not for any improper purpose, (2) the information sought must relate to a core claim or defense, (3) the identifying information must be directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense must be unavailable from another source. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001).

Requiring litigants to meet these standards ensures that speech is not chilled unnecessarily and that speakers are not unmasked inappropriately. As courts have explained, enforcing a subpoena to unmask an unknown speaker on the Internet "poses a real threat to chill protected comment on matters of interest to the public. Anonymity liberates." *Highfields*, 385 F. Supp. 2d

at 980–81. Therefore, enforcing such a subpoena "would be enabling [a litigant] to impose a considerable price on [another litigant's] use of one of the vehicles for expressing his views that is most likely to result in those views reaching the intended audience. That 'price' would include public exposure of [a litigant's] identity and the financial and other burdens of defending against a multi-count lawsuit—perhaps in a remote jurisdiction." *Highfields*, 385 F. Supp. 2d at 981.

Without judicial review to ensure that Strategic Vision has satisfied the First Amendment standard, Strategic Vision could use its subpoena to discover identifying information for these eight accounts (and any other accounts in the future) to chill or silence protected speech. The First Amendment protects against that and the Court should enforce those protections here.

## IV.   CONCLUSION

For these reasons, Twitter respectfully requests that the Court conduct the appropriate First Amendment analysis and quash the Subpoena entirely or modify it to allow Strategic Vision to obtain the account registration data and IP address associated with account creation for only those of the eight accounts for which Strategic Vision makes the required showing.

DATED: March 11, 2020

**PERKINS COIE LLP**

By: Julie E. Schwartz

Julie E. Schwartz

*Attorneys for Respondent*
Twitter, Inc.